Our last case for the morning is 20-4078 United States v. Tufana, counsel for appellate, if you would make your appearance and proceed please. Good afternoon, may it please the court, counsel for the United States, Jessica Spangl on behalf of Mr. Tufana. Mr. Tufana was seized. There is no disagreement about this basic fact. The disagreement lies with when he was seized. The government intends that Mr. Tufana was seized after the officer developed reasonable suspicion and everything that happened before that was the product of consensual encounter. In contrast, Mr. Tufana intends he was seized long before the officer developed reasonable suspicion. As this court stated in a legally and factually analysed case, United States v. Roberson, the critical question of when Mr. Tufana was seized turns on the show of authority slash submission to avoid analysis. And the answer is relatively straightforward. Looking at Roberson from the circuit, looking at primarily Brendan v. California and the record in this case, the conclusion that Mr. Tufana was seized before the officer developed reasonable suspicion is unavoidable. As a result, any evidence obtained from a legal procedure is properly, should have been, should have been suppressed. Could I focus on the Roberson's, Judge Parks' concurrence in Roberson? We have a little feedback issue, I think. Can you hear me? Okay. On that issue, Judge Parks talked about the Supreme Court's reasonable person approach and essentially that it sets a fairly high bar as to when a reasonable person would believe that they were not free to leave. And so with that, what I want to understand, it was a concurrence. And so what I want to understand is that Judge Parks went through and analyzed Drake and Delgado in reaching that conclusion. Do you have any quarrel with his interpretation of Supreme Court authority as it relates to what it means for a reasonable person to feel that they are free or not free to leave? Judge Parks' concurrence in Roberson seems to be the outlier, I would say, in that decision. And his interpretation of Supreme Court precedent is unusually broad and seems to ignore the idea that we take it on first a case-by-case basis and then we approach it as a totality of circumstances. I think in Roberson, both the dissent and the author, the lead opinion is the one that has control of the opinion, get it right that they look at the reasonable person in the situation of the defendant and they take all of the circumstances. And just as in Roberson, Mr. Tiffany here was in a parked car late at night. The officer approached him rather unexpectedly and parked in a way that signaled the officer's interest specifically in that car and then used his takedown lights to reinforce his interest in the car without any reason to do so. Counsel, could we just stop there? Is it your position that a seizure had taken place at that moment? Yes, Your Honor. There is no reason to go further. However, if there was any question, quite frankly, what the officer did after he parked the way that he parked and he used his takedown lights further supports the finding of a seizure. Just as in Roberson, we have the officer leave the car. He is in uniform and armed. And he approaches the car again and in Roberson, that seemed to be the cut-off point for the finding of a seizure. Well, Counsel, you keep talking about Roberson, but was there a court holding in that case about when a seizure actually took place? Relying on United States v. White from this court where it said you look at the most, when there is a fractured opinion. I think the way Roberson can be appropriately applied in this instance is we have two out of three judges say there was a seizure. The disagreement then might look, what happened after that seizure? Did the defendant submit or not? Then we have two out of three judges finding that there was no submission and therefore we don't have a medical seizure. Well, let's suppose we need to move on beyond just pulling in and takedown lights. After that, Officer Nelson approached the vehicle and asks the occupants for their names and birthdates. So let's stop there for just a second. And I take it because you said there was a seizure before that, that you still think there was a seizure. Is that correct? That is correct, Your Honor. And again, if there was any question about the officer's conduct not being the shoulder reported for, it is absolutely decided the minute the officer approaches the vehicle and says, not just, hey, what are you guys doing? He says, I need your names and I need your birthdates. The date of birth question... Isn't there a case law that an officer, let's say Delgado had an officer ask for names and identification and courts have said that it's not a seizure? I think that's taking an unfairly broad view of those cases. To be sure, officers are absolutely allowed to and should go up to people and say, what's your name? That's been sincerely. You can approach and ask for their name, even to see their identification, but that's it. All you can do is see it. In this instance, asking for date of birth is the equivalent of taking their ID. The date of birth serves only one purpose and that is to further identify an individual as officers investigate that individual. Without reasonable suspicion, an officer cannot investigate. What authority do you have that asking for a date of birth has such an effect? Just because somebody takes your date of birth doesn't mean you can't walk away. That's not like taking an ID. If somebody takes your ID, they're taking some government issue, a form of identification. Those are two different things. What authority do you have for that proposition? Your Honor, I don't have any specific authority because I could not actually find any cases in my research that address this very particular issue. But the date of birth serves as a very particular identifier, and especially at late at night after being singled out in a parking lot and put under a spotlight, it can only serve to say, hey, I'm going to look you up because I don't trust who you are. The officer wasn't looking to give out birthday cards or say, hey, right, you're going to be 30 next week. The officer actually explicitly made his intent clear later and said, I don't want your date of birth. He did. Didn't he? I'm sorry. Let me make sure I understand your argument, okay? As I understand it, really there are two critical junctures here, maybe more. One critical juncture, car, car, takedown lights, seizure. The second juncture, as I understood it, was not just the asking for the information, and maybe you're disabusing me in that notion, but as I understood it, the concern was asking for the information and also the advisement that I'm going to run this information through law enforcement databases. So, is it your view that just even in light of Mattis, just asking for the information itself would have constituted, in the totality of the circumstances, would have sealed the seizure question? In general, and as I made clear, hopefully made clear briefly, the defendant does not believe Mattis is relevant to this circumstance at all. In that case, as everyone has read, the officer had a reasonable suspicion to approach the parked car and then had a probable cause to do more, because in that instance, the driver did not have a driver's license. So, what happened at Manning seems to be, quite frankly, the normal course of events where we have an officer who has reasonable suspicion, goes to investigate, then finds in the course of the investigation, which he's absolutely entitled to do, finds a crime being committed, and then you take the next steps. In this case, he didn't even have a reasonable suspicion. Well, that's a good segue to a couple further questions. If we continue to parse the timeline here, I think we, in the last exchange, we got to the point where Officer Nelson not only had asked for names and birthdays, but had said he was going to run their names through a database. So, once we get to that point, where he tells them he's going to run the names, doesn't he have reasonable suspicion at that point? Let's just not worry about seizure for a second, but once we're at the point where he says he's going to run their names, does he have reasonable suspicion for a seizure? I think that depends on... I'm sorry, was there a question? I'm waiting. Well, I thought there was a question, but I'll be a little more specific. Didn't he at that point know from Mr. Tafuna that Mr. Tafuna said he was on parole and had a knife? Your Honor, we conceded that at the district court, and as much as I would like to un-concede that, no, I cannot. Well, did you concede the fact, or did you concede that he had reasonable suspicion based on that information? Both, Your Honor. All right. And just to throw one more thing in the mix, did the open beer can also give him reasonable suspicion? Absolutely not. That was not a violation of state law, and this is an officer who should have absolutely known better as a member of a specific task force. Okay. I think you gave us a very definitive response there. Go ahead. Okay. I'm sorry, but there was... Yeah, was there another question? No. Why don't you proceed? Okay. Let's see. Mr. Tafuna was seized. I mean, the officer's parking, as the government itself indicated, communicated a very specific interest. And so we have this... The officer emphasized an interest by using the state gun rights, and then everything else that follows, asking for names, asking for work dates, which further communicated a specific interest in investigating Mr. Tafuna. And then we have the second part of the analysis, which is Mr. Tafuna's submission. Unlike the defendant in Roberson, Mr. Tafuna passively sat there and complied with all of the officer's directives. There was no question of his submission. He absolutely did it. And unless there are further questions, I'd like to reserve the remainder of my time. Okay. We'll hear from the government now. May I please report? My name is Jennifer Williams for the United States. Police officers are allowed to approach individuals in public areas, even at night, and attempt to initiate a consensual encounter with them. In this case, Officer Nelson saw a car parked in the back corner of an apartment complex parking lot with four people in it at approximately 1 a.m. Based on his experience, those circumstances were indicative of drug behavior or stolen vehicles. Officer Nelson turned on his overhead white lights, approached the car on foot, and asked the occupants for their names and birthdates. He did not block in the car or its occupants, activate his emergency lights, brandish his weapon, question the occupants in an aggressive or threatening manner, issue any orders, or touch them in any way. This was a routine police citizen encounter, not a seizure, which the Fourth Amendment permits. It was a minimally intrusive way for Officer Nelson to safely and effectively patrol such an area and attempt to conduct a consensual interview. Mr. Tufuma's argument is essentially that reasonable suspicion is always necessary to which would mean that officers in situations such as this one could likely patrol such a location only after a reliable report of a criminal offense. That is not what the Fourth Amendment requires. Well, counsel, at what specific moment does the government contend that the officer had reasonable suspicion? At the moment when Mr. Tufuma told Officer Nelson that he was on parole and had a knife. And I think there's some conflation in Mr. Tufuma's briefs about the order in which things proceeded. Officer Nelson approached the car. He asked the occupants for their names and at no point up until then did he indicate any interest in running those names or birth dates through any kind of database. Then Mr. Tufuma told Officer Nelson that he was on parole and had a knife, and only then did Officer Nelson indicate that he would go back to his police car to run those names. So it was at that specific moment when Mr. Tufuma told Officer Nelson about his parole status and that he had a knife, that as Mr. Tufuma concedes, there was reasonable suspicion. Okay, so the necessary implication, as I see it, of that argument is it is your view that one step back from that point where the officer asked for the names and the birth date, at that point reasonable suspicion was not required because there had not been a seizure of that. That is correct. Yes. Okay. And just to be clear very quickly, do you agree with counsel that the beer can is irrelevant? We do. The beer can becomes relevant later on when the other officer discovers that as part of Mr. Tufuma's parole agreement, he is not supposed to be near alcohol or have And the open beer can becomes a part of reasonable suspicion for the events that occur later, but we agree that the open beer can is not relevant to the issue that is before this court, which is the consensual encounter up until Mr. Tufuma's admission about being on parole and having a knife. The defendant relied upon the D.C. Circuit's case in Delaney and their reply brief. I'd be interested in your view of how that impacts, if at all, how we should view the seizure question here. So I think one of the very important distinction between this case and both Roberson and the Delaney is whether or not the defendant's car or the defendant's person was physically impeded. So in both Roberson and Delaney, in Delaney it was the police car that parked in such a way as to, if not completely blocking in the defendant's car, at least it would have made it difficult for him to drive away from the encounter. In Roberson, I believe the police car didn't block in the car at issue, but when the police officers left the police car to approach the defendant's car, they did so in such a way that in order to drive away, the defendant would have had to essentially run over the police officers. So the difference between this case and the circumstances in Roberson and Delaney is whether or not the defendant's car was in any way physically prevented from leaving. And in this case, as Officer Nelson testified, as the pictures of the exhibits Mr. Tafuna included in his opening brief indicate, there was no physical impediment on the ability of that car to drive away, or the individuals in the car to get out of the car and walk away. But Officer Nelson parked in such a way that while, yes, he did focus on the defendant's car, which is permissible in a consensual encounter, he had no way blocked in the car. And that we would view as the fundamental difference between this case and especially Delaney. There's another, the D.C. Circuit did note that there was the presence of gunshots at the time, and so in its view, a reasonable person would not have felt free to leave because there were gunshots in the area, and there was no such factor present in this case. And if Mr. Tafuna and the occupants of his car had actually tried to leave, you mean to tell me that the officer would have let them leave? Well, he actually did testify, although I understand that his subjective belief is not relevant, he did testify that up until the point at which Mr. Tafuna told him about his parole status, he would have let him leave. But that's not the inquiry under this Court's case law, the Supreme Court's case law. The reasonable person inquiry doesn't rest on whether a person would have actually left, but on whether a reasonable person would have felt free to terminate the encounter and their criteria that the Court looks at to make that determination. And the Courts recognize that most people answer when police officers ask them questions, but that doesn't bear on whether, on the reasonable person inquiry, which again is based on the presence or the absence of factors, of factors that would suggest that the police officer displayed his authority in some way. Does the Supreme Court's recent case in Torres v. Madrid have any bearing at all on this case? I don't believe so. If you could, I believe I looked at it, but... It was a case actually from our circuit and it focused on the question of whether the defendant, you could have a seizure if the defendant did not submit, comply. Right, yes. And that's why I looked at it. But no, I don't believe it has any bearing on this case. We do concede in this case that if there was a show of authority, so there's a twin inquiry in determining whether an encounter is consensual. There has to both be a show of authority and the defendant had to submit to that show of authority. In this case, we concede that if there was a show of authority, that he submitted to that show of authority. Our argument is that because there wasn't a show of authority, his answering the questions and not walking away was simply voluntary cooperation as discussed by this Court in cases such as working. So the line of cases about whether the defendant submitted to a show of authority we don't believe are relevant to this case. I think the Roberson case, both the concurrence and the dissent, can be read in harmony in a case such as this to say that focusing specifically on the initial encounter, the use of the overhead white lights, that the fact that an officer used his overhead white lights in and of itself is not enough to turn a consensual encounter into a seizure. The concurrence goes further, but even the dissent seems to recognize that simply the use of overhead white lights is not enough. There have to be other indicia of authority and there are various cases from this Court and from other circuits that we cite in our brief that suggest what those other types of factors might be, and they include things like multiple police officers at the scene, use of flashing red and blue lights, speaking in an aggressive or threatening tone of voice, having a weapon that is actually unholstered, not simply a holstered weapon. And those factors, none of which were present in this case. In fact, looking at the facts of this case, it's hard to see, as the concurrence stated and the facts of Roberson, although we think it's even stronger in this case, it's hard to see how Officer Nelson could have conducted this encounter, which he was permitted to do, in a less intrusive way. It was late at night, he was alone, he turned on his overhead white lights so he could see the car and its occupants. He testified that he parked in such a way that he did not block them in, he approached them, his line, his path was such that he didn't block them in, he didn't unholster his weapon, there's no evidence that he spoke in an aggressive or threatening tone of voice, he simply asked them for their names and identification. All of that is permitted under the Fourth Amendment in a consensual encounter. He asked for their names and dates of birth, right? He didn't ask for their actual IDs? He did. He did not ask for their ID. And he's permitted to ask for names and dates of birth. I mean, in fact, under the case law, he's probably permitted to ask for ID too, but he didn't in this case. All he asked for was basic identifying information. Do you... And again, there's absolutely... Do you agree or disagree that Matt is not... Is applicable here? Is Matt applicable here? I thought it seemed to me it was. Well, we think it's applicable. I mean, the facts of every case differ a little bit. And so, there are facts in this case that were not present in Madden, but Madden, we think, as well as numerous other cases from this circuit and the Supreme Court, stand for the proposition that an officer is allowed to ask for basic identifying information as part of a consensual encounter. And that is exactly what he did in this case. And again, just to reiterate, because there was some suggestion in the reply brief that our argument was that not only for asking for names and birth dates, but indicating an interest in running them through a database was all permissible under a consensual encounter. That's not... We don't believe that argument is supported by the facts of this case. All he did was ask for names and birth dates. And then, when Mr. Tafuna volunteered the information about his parole status, did Officer Nelson then indicate he would run that information? And there's been... Again, there's been no... The information provided by Mr. Tafuna regarding his parole status provided reasonable suspicion. And then, just briefly, there's one other clarification based on the reply brief. The cases that we cite about white overhead lights, in none of those cases did the officer have reasonable suspicion. There's a suggestion in the reply brief that the officers did, but the whole point of those cases was that although the officers may have had some suspicions, as did Officer Nelson in this case, they did not have reasonable suspicion. And so, the holdings in those cases were that use of overhead white lights was permissible as part of a consensual encounter in the absence of reasonable suspicion. And that's the reason we cite in all those cases. Some from this circuit, some from other circuits. If the court has no further questions, I have nothing further. Thank you, Counsel. Just to address a few points that came up. At no point has the Supreme Court, nor any other circuit court, in a published or unpublished decision, said that officers, as part of a consensual encounter, can go up to an individual and say, I don't want to see your ID, and I'm going to use it to investigate you. The very word investigate suggests, in fact, implies that this is an investigative detention. Officers absolutely can go up and ask for their names. They can ask to look at the ID, to make sure that the ID and the person match. But that's it. To go beyond that would basically eliminate the idea of a consensual encounter and automatically sanction officers to engage in investigative detention without any reasonable suspicion. Okay, what I'm missing, however, is I thought you accepted the premise that the officer only said, I'm going to run this information after he knew that Mr. Tafuna was a felon and that he had a weapon. Isn't that what you're concealing? That's what the district court's factual findings seem to imply, and we did not challenge that on appeal. However, asking for the date of birth, even before Mr. Tafuna has answered, that draws the mind of the city. And that is the equivalent of taking a key for investigative purposes. At 1 a.m., under the bright glare of takedown lights, which just for his record, are not simply white lights. These are lights that serve a dual purpose. One, to help the officer see better, and two, to incapacitate the person under their glare. The date of birth tells anyone that this officer is looking into me. He doesn't just want to say after birth. Counsel? Counsel, it sounds like date of birth is the linchpin for your argument. So, what do you think would be your best case authority in support of that argument? This court's decision in the United States v. Rovers, quite frankly, because it stops it before we even get to the date of birth part. There was a clear display of mourning. It was a totality of the circumstance, but it's not a peace deal. And I'm about to run out of time, but I would like to address officer safety with you. Since I have run out of time, we submit that this was a legal seizure and submit the case for decision. Thank you, counsel. Thank you both of you for your arguments. Court will be in recess.